UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

PAUL JONES,

      Plaintiff                                          CASE NO.

vs.                                                                            Hon.

IPX INTERNATIONAL EQUATORIAL GUINEA, S.A,
A foreign corporation of the REPUBLIC OF
EQUATORIAL GUINEA,

      Defendant.

_____/

Dean Elliott (P60608)
Dean Elliott, PLC
Attorney for Plaintiffs
201 East Fourth Street
Royal Oak, MI 48607
(248) 251-0001
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, by Counsel, state as follows in support of their complaint:

1. Plaintiff Paul Jones is a resident of the City of Southfield, State of Michigan, County of Wayne.

2. Defendant IPX International Equatorial Guinea, S.A, ("IPX, EG) is a business corporation formed under the statutes of the Republic of Equatorial Guinea and conducting business in the City of Southfield, State of Michigan, County of Oakland.

3. The cause of action arose in Southfield, Michigan.

4. This Court has subject matter jurisdiction over this controversy pursuant to 28

1

U.S.C. § 1332.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) and (d) because Defendant conduct business in this district, and the unlawful actions occurred in this district.

6. The amount in controversy is greater than $75,000.

## **FACTUAL ALLEGATIONS**

7. Plaintiff re-alleges and incorporates the preceding paragraphs by reference.

8. Paul Jones is a native Michigander who has worked overseas most of his professional life.

9. In 2011, he realized that the infrastructure in Equatorial Guinea was not able to supply the telecommunication and internet needs of companies conducting business in the country.

10. Plaintiff also realized that the workforce in Equatorial Guinea did not have the level of managerial and technical expertise to deliver these services.

11. In 2011, he came together with other investors to form a company to provide telecommunication and internet services to businesses and non-governmental organizations in Equatorial Guinea.

12. On February 25, 2011, IPX INTERNATIONAL EQUATORIAL GUINEA, S.A was incorporated in the Republic of Equatorial Guinea.

13. Plaintiff enlisted the nephew of the President of Republic of Equatorial Guinea to join the project as the majority owner and Chairman of the Board due to his standing in the country.

14. In addition to being the nephew of the President, the Chairman's father is the advisor to the President of Equatorial Guinea (his brother) on internal security

matters and has the power of arrest.

15. Plaintiff Jones owns ten percent of the shares in Defendant IPX, EG and is a member of the board of directors.

16. In addition, to owning ten percent of the company, Plaintiff Jones is also employed as Director General of IPX, EG and works pursuant to the terms of an annual contract. (Exhibit 1.)

17. Plaintiff Jones' contracts are for the term of one year.

18. The contract calls for Plaintiff Jones to be paid $16,000 USD per month.

19. Prior to 2016, Defendant IPX, EG used a Michigan based employee leasing company to make these payments.

20. In 2013, Plaintiff's contract was modified so in addition to his salary and benefits, IPX, EG paid Plaintiff Jones' United States tax liability.

21. Since, 2013, Defendant IPX, EG increased Plaintiff's gross wages to offset his tax burden and had the leasing company withheld Plaintiff's Income taxes.

22. Each monthly wage payment was approved in writing by IPX, EG.

23. The contract also calls for performance bonuses, holiday pay, benefits, and for payment into a liquidation fund which is to be paid upon termination.

24. Defendant IPX, EG began conducting business in 2011 and has grown rapidly as a result of Plaintiff's actions.

25. Sales have increased each year and Defendant has achieved a profit over the last four in excess of $1,000,000 USD each year.

26. During this time, Defendant IPX, EG has conducted business in Michigan.

27. Initially, Defendant IPX, EG contracted with IP Tribe, LLC a Michigan limited

liability company, to purchase the majority of its telecommunications equipment in Michigan and ship it to Equatorial Guinea.

28. These purchases continued until 2017.

29. In 2010, IPX, EG (pre-incorporation) entered into a contract with IP Tribe, LLC to act as an employee leasing firm.

30. From 2010 until 2016 IPX EG used IP Tribe as a conduit for paying the majority of IPX EG's expatriate workers who were working in Equatorial Guinea.

31. Each month there was an average off six to ten third country nationals from Philippines, Brazil, Ghana, and the United States who signed contracts with IPX EG but received payment from IP Tribe on behalf of IPX EG.

32. IP Tribe administered these payments in Livonia and Southfield, Michigan.

33. During this time, the Chairman of the Board used IPX EG for personal banking matters such as wiring funds to IP Tribe to satisfy personal bills and liabilities in the USA and Europe.

34. Plaintiff expressed concerns to the Chairman about the lawfulness of these transfers.

35. Pursuant to the policy adopted by the board of IPX, EG, Plaintiff received a bonus equal to 5% of the net profit of Defendant for the years 2011, 2012, and 2013.

36. Defendant paid Plaintiff holiday pay of $16,000 USD per annum from 2012, 2013 & 2014.

37. Defendant paid Plaintiff job based performance bonuses for years 2012 and 2013.

38. Defendant paid Plaintiff an annual bonus of three times his monthly salary for 2012 and 2013.

39. On October 15, 2015, Defendant IPX, EG formed IPX, USA, LLC a wholly owned subsidiary that was formed in the State of Michigan under the Michigan Limited Liability Act.

40. In January, 2016, Defendant IPX, EG transferred Plaintiff Jones from working in Malabo, the capital of Equatorial Guinea, to Southfield, Michigan to set up an office to conduct business for IPX, EG and IPX, USA, LLC in the United States.

41. IPX, EG hired Plaintiff's brother in law as General Manager in 2016 to assume some of Plaintiff's duties in Equatorial Guinea as Plaintiff was no longer stationed in country full time.

42. IPX, USA, LLC rented an office in the Southfield Town Center.

43. In February, 2016, IPX, USA, LLC purchased two condominiums in Southfield, Michigan to host IPX, EG customers, officers, and employees while they were in Michigan to conduct business.

44. The condos have been occupied approximately 30% of the time since their purchase for IPX, EG business.

45. IPX, EG stationed Plaintiff Jones at the IPX, USA Southfield office.

46. Plaintiff conducted the business of Defendant IPX, EG out of that office on a daily basis beginning in August, 2016.

47. Plaintiff hosted IPX, EG officials, including the Chairman, at the Southfield office and the condominiums in Southfield, Michigan.

48. Since Plaintiff's assignment to the Southfield office, he has conducted the

business of IPX, EG on a daily basis in Southfield, Michigan.

49. Plaintiff set up a network operating system in Southfield that has the capacity to monitor IPX, EG's global network as contractually required by several of IPX, EG's US based customers.

50. Plaintiff Jones supported IPX, EG contracts for Marathon, Noble, and Exxon out of the Southfield office.

51. Plaintiff supported international contracts for IPX EG out of the Southfield office.

52. Since being stationed in Southfield, Plaintiff has worked with numerous vendors to bid new projects to be performed in Equatorial Guinea for IPX, EG.

53. MCL 450.2015 requires foreign corporations to obtain a certificate of authority to transact business in the State of Michigan.

54. Despite, conducting business in Michigan on a daily basis, Defendant IPX, EG has never obtained a certificate of authority to conduct business in Michigan.

55. It has never registered as a foreign corporation.

56. Since 2011 Plaintiff has performed all of his duties as an employee and shareholder of IPX, EG.

57. Since 2014, Defendant IPX, EG breached its employment contract by failing to pay Plaintiff his performance bonus for the years 2014-2017.

58. IPX, EG has also breached the employment agreement by failing to pay holiday pay for 2015-2017.

59. Plaintiff has requested these payments on numerous occasions.

60. In the fall of 2016, after Plaintiff expressed concerns to the Chairman about the lawfulness of his banking activities, Defendant began searching for ways to

remove Plaintiff from the company.

61. Defendant accused Plaintiff of overpaying himself by receiving a US tax subsidy even though the company had previous approved these payments.

62. Since October 2016, Defendant IPX, EG has refused to pay state and federal withholding taxes for Plaintiff Jones.

63. Since October 2016, Defendant IPX, EG has refused to pay Social Security and Medicare tax for Plaintiff.

64. Defendant refused to pay Plaintiff his salary for the first three months of 2017 until he signed a temporary contract that did not include taxes.

65. Plaintiff signed the temporary contract on or about March 7, 2017, because he had not been paid in three months.

66. In 2017, Defendants have refused to pay Plaintiff a performance bonus arising from the CEIBA 2 project in Equatorial Guinea in the amount of $170,583 USD,

67. On April 28, 2017, Defendants suspended Plaintiff.

68. Plaintiff was told that he was being suspended due to allowing a vendor to modify a contract without informing the Chairman.

69. This decision was in the scope of Plaintiff's authority and followed all company procedures.

70. This suspension was a pretext to figure out a way to divest Plaintiff of his stock in IPX, EG which has appreciated dramatically.

71. On the date of his suspension, Plaintiff had not received his pay in the amount of $16,000 USD for the month of April, 2017 that was due under the coerced temporary contract.

72. Defendants withheld this money until July and then only paid part of his April pay.

73. On or about May 9, 2017, Defendants took custody Plaintiff's brother in law's passport while he was in Equatorial Guinea.

74. This left Plaintiff's brother in law in a dangerous position as he was without a passport and without an employment contract and as a result in Equatorial Guinea illegally.

75. On information and belief, Defendants took this action to pressure Plaintiff.

76. On May 11, 2017, Plaintiff was told he was being suspended without pay while an investigation is completed.

77. Plaintiff has not received pay for part of April, May, June and July, 2017.

78. Since that time, Defendants IPX, EG sent numerous employees to Southfield to staff the office and review business records.

79. Plaintiff has cooperated with Defendants' investigation despite not being paid.

80. Plaintiff has not received the result of the investigation or an update on the status of his suspension.

## COUNT I
## BREACH OF CONTRACT-EMPLOYMENT AGREEMENT

81. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

82. Plaintiff and Defendant entered into annual employment contracts. (Exhibit 1.)

83. The contract provided that Plaintiff would receive a salary of $16,000 USD per month exclusive of any taxes.

84. The agreement also called for IPX, EG to pay $1,300 per month in living expenses, holiday pay, bonuses, and establish a worker liquidation fund to be

paid upon the termination of Plaintiff's employment.

85. Plaintiff and Defendant entered into a contract modification when Plaintiff was assigned to work in Southfield, Michigan.

86. The modification required Defendant IPX, EG to pay Plaintiff's taxes.

87. Defendant IPX, EG breached these contracts by failing to pay Plaintiff wages for May, June and July and failing to pay and withhold Plaintiff's taxes from October, 2016 to the present.

88. Defendant IPX, EG breached the contract by failing to pay holiday pay in the amount of $45,000 and bonus pay in the amount of $350,583.

89. Plaintiff also has future damages in the amount of $16,000 per month.

## **RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief against Defendant:

a. Award Plaintiff damages in an amount which is fair, just and reasonable including lost wages, future wages, unpaid bonuses, holiday pay and any other benefits due under his contract;

b. Award Plaintiff damages for severe emotional distress;

c. award Plaintiff interest and costs;

i. any further or other relief that this court deems just and appropriate in this case.

Respectfully submitted,

/S/Dean Elliott
Dean Elliott, PLC
201 East Fourth Street
Royal Oak, Michigan 48067
(248) 251-0001
E-mail Dean@DeanElliottplc.com
P-60608

Dated: August 1, 2017

9

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

                                              Respectfully submitted,

                                              /S/Dean Elliott
                                              Dean Elliott, PLC
                                              201 East Fourth Street
                                              Royal Oak, Michigan 48067
                                              (248) 251-0001
                                              E-mail Dean@DeanElliottplc.com
Dated: August 1, 2017                 P-60608