UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

PAUL JONES,

Plaintiff                                    CASE NO.   17-cv-12483
vs.                                          Hon.  John Corbett O'Meara

IPX INTERNATIONAL EQUATORIAL GUINEA, S.A,
A foreign corporation of the REPUBLIC OF
EQUATORIAL GUINEA,

Defendant.
_____/

Dean Elliott (P60608)
Dean Elliott, PLC
Attorney for Plaintiff
201 East Fourth Street
Royal Oak, MI 48607
(248) 251-0001

Jeena Patel
Warner Norcross (P70175)
2000 Town Center Suite 2700
Southfield, Michigan 48075

---

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>**

**INTRODUCTION**

Plaintiff filed a complaint alleging breach of contract arising from his employment with Defendant IPX, EG, a foreign company that while headquartered in Equatorial Guinea ("EG"), has an office in Southfield, Michigan.  IPX, EG is a telecommunications company that provides data and internet services to large corporations and non-governmental entities in Africa.  It has conducted substantial business in Southfield, Michigan over the last six years.  In 2016, IPX, EG built a Network Operations Center in the Southfield Town Center.

Given the circumstances, Defendant's motion must be denied.  It is patently absurd for IPX, EG to suggest to this Court that it lacks sufficient minimum contacts with Michigan and that jurisdiction cannot be established under Michigan's long arm statute.   In fact, IPX, EG's own attorney sends her bill each month to IPX, EG's Southfield office.  Defendant's spurious contention that these contacts are insufficient to establish personal jurisdiction, or, in the alternative the case should be dismissed and re-filed in Equatorial Guinea, is totally without merit.  For the reasons that follow, the motion should be denied.

**APPLICABLE FACTS**

EG is ruled by a president who came to power in a 1979 military coup.  The government and legal system is controlled by his family.  It is considered to be

extremely corrupt. The U.S. State department's website notes:

> -The judicial system is not independent, as the President is the Chief
> Magistrate. Corruption throughout the government, including the judiciary,
> makes it difficult for a U.S. business to protect its investment, raising the
> risk of doing business in EG. Occasionally, business disputes are treated as
> criminal cases and passports of foreign managers are confiscated until the
> case is resolved.

> -The judicial system is nominally independent, but in reality is
> heavily influenced by the executive branch. The government does not
> consistently or reliably enforce judicial decisions.

>> -Thee are no consistent mechanisms for investment dispute resolution.
>> Generally disputes are handled in direct communication with
>> the relevant government Ministry.  The government is
>> frequently very slow to respond.  Decisions often have to be
>> made at the Ministerial or Presidential level.

> -There are few established mechanisms to compel the government to pay
> investors, and the Embassy has limited capacity to intervene.

> -EG has strict laws against corruption, but they are not enforced.
> **Corruption is very common in EG.**

> -EG is not a party to the Convention on the Settlement of Investment
> Disputes between States and Nationals of Other States (ICSID Convention -
> also known as the Washington Convention) or the New York Convention of
> 1958 on the Recognition and Enforcement of Foreign Arbitral Awards.

(Exhibit 2, State Department 2013 and 2016  Investment Climate Statement.)

Plaintiff Paul Jones is a Michigan native who has worked overseas

throughout his professional life.  In 2011, he realized that the infrastructure in EG

was not able to supply the communication and internet needs of companies

2

conducting business in that country. (Ex. 2, ¶ 2.)    In 2011, Jones came together

with other investors to form a company to provide internet services to businesses

and non-governmental organizations in EG.  (Exhibit 2, ¶ 3.)  On February 25,

2011, IPX International EG, S.A was incorporated in the Republic of EG.  Plaintiff

enlisted the nephew of the President of the Republic of EG to join the project as

the majority owner and Chairman of the Board due to his standing in the country.

(Exhibit 2, ¶ 5.)  In addition to being the nephew of the President, the Chairman's

father is the advisor to the President of EG (his brother) on internal security

matters and has the power of arrest.  (Exhibit 2, ¶ 6 .)

Jones owns ten percent of the shares in Defendant IPX, EG and is a member

of the board of directors.  (Exhibit 2, ¶ 7.)  In addition, to owning ten percent of

the company, Jones is also employed as Director General of IPX, EG and works

pursuant to the terms of an annual contract.  (R-1-1.)  Plaintiff Jones' contracts are

for one year terms.  He is paid $16,000 USD per month.

 Prior to the fall of 2016, IPX, EG used a Michigan based employee leasing

company, IP Tribe, LLC to handle Jones' and its other expatriate employee's

payroll.  Jones received his salary through IP Tribe on behalf of IPX, EG and had

Michigan state taxes withheld.  (Exhibit 2, ¶ 11.)  IPX, EG also contracted with IP

Tribe, LLC to purchase the majority of its equipment in Michigan and ship it to

3

EG.  These purchases continued until 2017.  (Exhibit 2, ¶ 12.)

On October 15, 2015,  IPX, EG formed IPX, USA, LLC a wholly owned subsidiary that was formed in the State of Michigan under the Michigan Limited Liability Act.  In January, 2016,   IPX, EG transferred Jones from Malabo, the capital of EG, to Southfield, Michigan, to set up the office that currently conducts business for IPX, EG and IPX, USA, LLC in the United States.  ( R. 4-2, Ondo Affidavit ¶ 15, 16; Exhibit 2, ¶ 14.) The sign on the door of the office in Southfield door reads "IPX Group" not IPX, USA or IPX, EG.  (Exhibit 3, Photo.) IPX Group was the name the officers of the company used to refer to the joint IPX, EG and IPX, USA business operations in Southfield, Michigan.  (Exhibit 2, ¶ 15, ) IPX, USA's sole business was finding contractors and products to serve IPX, EG. The only workers in the "IPX Group" office were employees of IPX, EG who were paid by IPX, EG.  (Exhibit 2, ¶ 16, )   IPX, USA never had any employees. (Exhibit 2, ¶ 17, )

In the spring of 2016, IPX, USA, LLC purchased two condominiums in Southfield, Michigan to host IPX, EG customers, officers, and employees while they were in Michigan to conduct business at the Network Operations Center.  The condos have been occupied frequently by IPX, EG officers and employees visiting Michigan to conduct business for IPX, EG. (Exhibit 2, ¶19 )

4

IPX, EG stationed  Jones at the IPX Group Southfield office in his roll as Director General of the company.  (Exhibit 2, ¶ 21. ) He worked in Southfield for approximately nine months in 2016.  (Exhibit 2, .) He  worked at the Southfield office in 2017 until he was suspended.  (Exhibit 2, ¶ 23. )  Plaintiff hosted IPX, EG officials, including the Chairman of the Board, at the Southfield office and the condominiums in Southfield, Michigan.   (Exhibit 2, ¶ 24.)  Plaintiff set up a Network Operating System in the Southfield office that has the capacity to monitor IPX, EG's global network as contractually required by several of IPX, EG's stateside based customers.  ( R. 4-2, Ondo Affidavit ¶ 12; Exhibit 1.)  Jones supported IPX, EG contracts for Marathon, Noble, and Exxon out of the Southfield office. (Exhibit 2, ¶26. )  Plaintiff also supported international construction contracts for IPX EG out of the Southfield office.  (Exhibit 2, ¶ 27 ; Exhibit 4, Contract[1].)  Since being stationed in Southfield, Plaintiff has worked with numerous vendors to bid new projects to be performed in EG for IPX, EG. (Exhibit 2, ¶ 28.)

In addition to assigning Jones to work in Southfield, Defendant has also sent numerous employees to work in Southfield, Michigan.  Defendant has

---

[1]The Invoice is "Prepared for IPXEG Attn Paul Jones".  It is addressed to "IPX Group 1000 Town Center Drive Suite 1960 Southfield, Michigan 48075" as both the "Bill to" and "Ship to" address.   There is no such entity.

5

stationed the following employees to work in Michigan:

a.   Justin Ondo, Chairman of the Board-worked in Michigan on behalf of Defendant for approximately three weeks in January, 2016 and then May/June of 2016.  He also worked in Southfield for approximately one week in July of 2016.

b.   Dzidzorli Sallah-Director of Operations and board member-worked in Michigan on behalf of Defendant numerous times including: 1) April 2014 for 3 to 4 weeks; 2) 2015 three to four weeks at the IP Tribe warehouse; 3) late March until early May; 2016 and in August, 2016 for several weeks to lead setting up the IPX office in Southfield including purchasing, installing and testing equipment.

c. Sambola Manhah, Systems Enginerr-worked November, 2015 for 3 weeks on IPX, EG equipment at the Ip Tribe warehouse and August 2016 for about a month to prepare equipment for delivery to IPX, EG.  He also worked on setting up the IPX office in Southfield including installing and testing equipment.

d.   Rosevelt Berry , Systems Engineer- worked in Southfield from July to September,  2017,  on behalf of IPX, EG.

e.   Bladamir Pelera, Systems Enginerr-worked in Southfield in August, 2016 for about a month to prepare equipment for IPX, EG customers and the IPX EG Network operating center in Southfield, Michigan.

f.   Jose Obreiro, Government Relationship Manager-worked in Southfield in Augus and September 2016 for about 3 weeks to host a client visiting from GE Petrol (the EG national petroleum company).

g.   Senador Mba, former Director of Administration-worked in Southfield in January 2016 for about 3 weeks to organize IPX, USA and discuss immigration concerns.

h. Cassandra Biyang, Commercial Manager-worked in Southfield in July 2016 for about 2 weeks to set up the IPX Group office.

6

  i. Maria Miko-corporate attorney from EGu, worked in Southfield in December 2016 for about to weeks to meet with Warner Norcross about immigration concerns as a result of having employees of IPX, EG working in Southfield, Michigan without work visas.

(Exhibit 2, ¶ 30.)

Despite, conducting business in Michigan on a daily basis and basing its Network Operations Center in Southfield, IPX, EG has never obtained a certificate of authority to conduct business in Michigan.  It has never registered as a foreign corporation.  (Exhibit 1, ¶ 32.)

Since October 2016, Defendant IPX, EG has refused to withhold state and federal taxes or pay Social Security and Medicare for Jones despite stationing him in Michigan.  (Exhibit 2, ¶¶ 33, 34.)  Defendant refused to pay Plaintiff his salary for the first three months of 2017, for work performed in Michigan, until Plaintiff signed a temporary contract that did not include taxes.  (Exhibit 2, ¶ 35.)  Plaintiff only signed the temporary contract on or about March 7, 2017, because he had not been paid in three months.  (Exhibit 2, ¶ 36.)  On April 28, 2017, while Plaintiff was working in the Southfield office, Defendant suspended Plaintiff during a conference call. (Exhibit 2, ¶ 37.)  Plaintiff was told that he was being suspended due to allowing a vendor to modify a contract without informing the Chairman. (Exhibit 2, ¶ 38.)  The alleged misconduct occurred while Plaintiff was working at

7

the IPX Group office in Southfield.  (Exhibit 2, ¶ 39.)

IPX, EG hired Plaintiff's brother in law as General Manager in 2016 to assume some of Plaintiff's duties in EG as Plaintiff was no longer stationed in country full time.  On or about May 9, 2017, IPX, EG's  corporate attorney took custody Plaintiff's brother in law's passport while he was in EG.  (Exhibit 2, ¶ 41.) This left Plaintiff's brother in law in a dangerous position as he was without a passport and without an employment contract and as a result in EG illegally and he was forced to flee the country.  (Exhibit 2, ¶ ¶ 42, 43.)

On May 11, 2017, Plaintiff received a letter informing him that he was being suspended without pay from IPX, EG.  (Exhibit 2, ¶ 44.)  Since that time, IPX, EG has sent employees to Southfield to staff the office and review business records with Plaintiff.  (Exhibit 2, ¶ 45. )

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2),  Plaintiff has the burden of establishing that the exercise of jurisdiction over the defendant is proper. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002).  A plaintiff "need only make a prima facie showing of jurisdiction." Id. (*quoting CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996)) (internal quotation marks omitted). However, it is

insufficient for a plaintiff to merely reassert the allegations contained in its

pleadings. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). The

plaintiff must articulate specific facts to show that the court has jurisdiction. Id.

The court must then consider all of the facts presented in the pleadings and

affidavits in a light most favorable to the plaintiff, and does not weigh any

contrary assertions offered by the defendant. *Intera Corp. v. Henderson*, 428 F.3d

605, 614 (6th Cir.2005)

Finally, a "court disposing of a 12(b)(2) motion does not weigh the

controverting assertions of the party seeking dismissal," because courts want "to

prevent non-resident defendants from regularly avoiding personal jurisdiction

simply by filing an affidavit denying all jurisdictional facts." *Theunissen* 935 F.2d

at 1459.

## ARGUMENT

## I. DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION PURSUANT TO THE MICHIGAN LONG ARM STATUTE.

### A. DEFENDANT IS SUBJECT TO THE COURT'S GENERAL JURISDICTION.

In diversity cases such as this, courts look to the law of the forum state to

determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228

F.3d 718, 721 (6th Cir.2000); *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins*. Co.,

Ltd., 91 F.3d 790, 793 (6th Cir.1996). Under Michigan law, the exercise of

personal jurisdiction is valid only if it is both authorized by one of Michigan's

long-arm statutes and meets constitutional due process standards. *Calphalon*, 228

F.3d at 721. Michigan's long-arm statute provides for both "limited" jurisdiction

over corporations pursuant to M.C.L. § 600.715 and "general" jurisdiction over

corporation pursuant to M.C.L. § 600.711.

Mcl 600.711 provides that general jurisdiction is available when:

The existence of any of the following relationships between a
corporation and the state shall constitute a sufficient basis of
jurisdiction to enable the courts of record of this state to exercise
general personal jurisdiction over the corporation and to enable such
courts to render personal judgments against the corporation.

(1) Incorporation under the laws of this state.

(2) Consent, to the extent authorized by the consent and subject to the
limitations provided in section 745.

(3) The carrying on of a continuous and systematic part of its general
business within the state.

A state court may exercise personal jurisdiction over an out-of-state

defendant who has "certain minimum contacts with [the State] such that the

maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945). "A court may assert general jurisdiction over foreign (sister-state or

10

foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S.Ct., 746, 754 (2014).    In *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558–59, 198 L. Ed. 2d 36 (2017) the Supreme Court stated,

> The "paradigm" forums in which a corporate defendant is "at home," we explained, are the corporation's place of incorporation and its principal place of business.  The exercise of general jurisdiction is not limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State.

In this case, IPX, EG has continuous and systematic affiliations with Michigan dating back to 2011.  It paid its payroll from a Michigan company.  It purchased its equipment through a Michigan company and stored it in a warehouse in Michigan.  It opened a subsidiary in Michigan.  It established an office containing its Network Operations Center in Michigan.  It has staffed the network operations center with its employees.  The subsidiary has no employees and Defendant's employees perform all work for the subsidiary.  In sum, these contacts demonstrate that IPX, EG has availed itself of general personal jurisdiction in Michigan

## B.  THE COURT HAS SPECIFIC PERSONAL JURISDICTION OF DEFENDANT.

11

MCL 600.715 is very broad and provides:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

 MCL  600.715 provides for personal jurisdiction over corporations for suits arising out of the act or acts constituting the transaction of any business within the state.  MCL § 600.715(1).  Therefore, if Jones' suit against IPX, EG arises from the "transaction of ... business" by IPX, EG in Michigan, then the assertion of jurisdiction over IPX, EG is appropriate in this action.

"Transaction of any business" is very broad, and is established by "the slightest act of business in Michigan." *Neogen Corp. v. Neo Gen Screening, Inc*.,

282 F.3d 883, 888 (6th Cir.2002) (citing *Lanier v. Am. Bd. of Endodontics*, 843

F.2d 901, 906 (6th Cir.1988).

"The word 'any' means just what it says. It includes 'each' and 'every'.... It

comprehends the 'slightest'." *Sifers v. Horen*, 385 Mich. 195, 199 n. 2, 188

N.W.2d 623 (1971) (quoted with approval in *Lanier v. American Bd. of*

*Endodontics*, 843 F.2d 901, 905–06 (6th Cir.), cert. denied, 488 U.S. 926, 109

S.Ct. 310, 102 L.Ed.2d 329 (1988)).

   In this case, Defendant's in state activities of building a Network Operations

Center, stationing Plaintiff in Southfield to work, paying Michigan taxes, and

stationing numerous other employees to work in Southfield obviously satisfy the

requirements of MCL 600.715.

### C.   THE EXERCISE OF SPECIFIC JURISDICTION PURSUANT TO THE MICHIGAN LONG ARM STATUE IS CONSISTENT WITH THE LIMITATIONS PLACED BY THE UNITED STATES CONSTITUTION UPON THE EXERCISE OF PERSONAL JURISDICTION.

   The Michigan long arm statute has been interpreted to extend the reach of

Michigan courts to the limits placed upon jurisdiction by the federal constitution.

*Green v. Wilson*, 455 Mich. 342, 350, 565 N.W.2d 813 (1997).  The Sixth Circuit

has established a three-part test for determining whether a state may exercise

specific jurisdiction:

13

> First, the defendant must purposefully avail himself of the privilege
> of acting in the forum state or causing a consequence in the forum
> state. Second, the cause of action must arise from the defendant's
> activities there. Finally, the acts of the defendant or consequences
> caused by the defendant must have a substantial enough connection
> with the forum state to make the exercise of jurisdiction over the
> defendant reasonable.

*Air Products and Controls, Inc. v. Safetech Intern., Inc.* 503 F.3d 544, 550 (6th

Cir.2007) (quoting *So. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th

Cir.1968)). The plaintiff must satisfy each of these elements in order for the court

to exercise personal jurisdiction over the defendant.

As described by the Supreme Court, this is a very fact-specific analysis.

The "purposeful availment" requirement ensures that a defendant will not be haled

into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated"

contacts, or of the "unilateral activity of another party or a third person."

Jurisdiction is proper, however, where the contacts proximately result from actions

by the defendant himself that create a "substantial connection" with the forum

State.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–476, 105 S.Ct. 2174,

85 L.Ed.2d 528 (1985).  The Supreme Court held:

> When the defendant has "engaged in significant activities within a
> State or has created continuing obligations between himself and
> residents of the forum, he manifestly has availed conducting business
> there, and because his activities are shielded by the benefits and
> protections of the forum's laws it is presumptively not unreasonable

14

to require him to submit to the burdens of litigation in that forum as
well." (Id, internal quotation marks omitted).

Id.

Further, the Sixth Circuit has held,

Physical presence of an agent is not necessary ... for the transaction
of business in a state. The soliciting of insurance by mail, the
transmission of radio broadcasts into a state, and the sending of
magazines and newspapers into a state to be sold there by
independent contractors are all accomplished without the physical
presence of an agent; yet all have been held to constitute the
transaction of business in a state.

*Mohasco Indus.*, 401 F.2d at 382 (footnotes omitted).

## 1.  Defendant Purposely Availed Itself of the Privilege of Acting in Michigan.

Even in cases where the cause of action arose in a plaintiff's state, a court

may not exercise personal jurisdiction over a defendant where the defendant has

not purposefully entered into a connection with the forum state " 'such that he

should reasonably anticipate being haled into court there.' " *LAK, Inc. v. Deer*

*Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir.1989) (quoting *World–Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490

(1980)).  "[I]t is essential in each case that there be some act by which the

defendant purposefully avails itself of the privilege of conducting activities within

the forum State, thus invoking the benefits and protections of its laws." *Hanson v.*

*Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958)

15

In *AlixPartners, LLP v. Brewington*, 133 F. Supp. 3d 947, 957–58 (E.D.

Mich. 2015) the court noted, "Because the purposeful availment test is admittedly

murky, the best approach is often to compare and contrast the facts of the case

with that of factually similar cases, always recognizing that the particular

circumstances of each case is unique".

In *Shah v. Nu-Kote Int'l, Inc.*, 898 F. Supp. 496, 502 (E.D. Mich. 1995),

aff'd, 106 F.3d 401 (6th Cir. 1997) discussed what constitutes purposeful

availment and found it had  jurisdiction stating:

> When analyzing personal jurisdiction in the context of a breach of
> contract claim, the solution cannot turn on "conceptualistic ... theories
> of the place of contracting or performance." *Burger King Corp. v.
> Rudzewicz*, 471 U.S. 462, 478–79, 105 S.Ct. 2174, 2185, 85 L.Ed.2d
> 528 (1985) (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313,
> 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943)). Rather, the analysis
> must look to "prior negotiations and contemplated future
> consequences, along with the terms of the contract and the parties
> actual course of dealing." *Burger King*, 471 U.S. at 479, 105 S.Ct. at
> 2185; see also *Lanier*, 843 F.2d at 910.
> Defendant clearly satisfies the first requirement of Southern Machine
> Co., supra; there can be no doubt that Defendant purposely availed
> itself of the privilege of acting in Michigan. It maintains a sales
> representative here, and sells its product throughout the state. For
> purposes of limited personal jurisdiction, substantial contacts with the
> forum state are not required.

In *Aug. v. Manley Toys*, Ltd., 68 F. Supp. 3d 722, 732 (E.D. Mich. 2014) the

court found purposeful availment stating:

16

> [T]his Court finds that Manley's conduct in contracting with August
> and performing under that contract for an extended period of time,
> wiring payments under the contract to August here in Michigan and
> communicating with August extensively here in Michigan via email
> and telephone created a "substantial connection" with Michigan. In
> allegedly refusing to remit payments for work August alleges he
> performed under the contract, Manley could reasonably expect to be
> haled into court in here. "Surely, based upon these contacts, [Manley]
> had "fair warning" that these activities, specifically directed toward
> [August] in Michigan, if injurious to [August], might require
> [Manley] to come to Michigan to answer for its conduct. Certainly, in
> such an instance, Michigan has an interest in providing [Manley] with
> a forum to attempt to redress these wrongs. This is all that traditional
> notions of justice and fair play require." Light Source, 2010 WL
> 2351489, at *6 (alterations added).

In *Hige v. Turbonetics Holdings, Inc*., 662 F. Supp. 2d 821, 832 (E.D. Mich.

2009) the court found limited personal jurisdiction in a case which involved an

employment contract between a Michigan resident and a foreign company for the

resident to work outside of Michigan where the plaintiff worked part of the time

in Michigan, was one of the major shareholders of the defendant, and the

defendant paid Michigan taxes and travel expenses from Michigan and office

expenses in Michigan. The court held:

> These facts, however, constitute more than the mere unilateral acts of
> the plaintiff, as argued by Turbonetics. Rather, while the plaintiff
> may have initiated the contacts, Turbonetics acquiesced and
> supported the contacts with Michigan by facilitating the work done
> by the plaintiff in this state. The plaintiff in Hadid did none of his
> work in Michigan and was overseas when the contract was
> terminated, leading to a conclusion by the Court that the claim did not

17

arise out of the defendant's contacts with Michigan. Finally, the plaintiff here, unlike the plaintiff in Hadid, spent at least some portion of his time as an employee in developing business in Michigan.

*Turbonetics Holdings, Inc*., 662 F. Supp. 2d at 830–31.

In this case Defendant IPX, EG purposely availed itself of itself of the privilege of conducting activities within Michigan.  The evidence demonstrates that it has substantial connections with Michigan dating back to 2011.  IPX, EG paid its payroll through a Michigan company.  It purchased all of the equipment it installed on its jobs through a Michigan company.  It opened a subsidiary in Michigan.  It maintains an office in Michigan and receives bills at the office, including one from Warner Norcross the very attorneys claiming that it does not have an office in Michigan.  IPX, EG opened a Network Operations Center in Michigan.  It has stationed employees, including Plaintiff in Michigan since January, 2016 who conduct company business from Michigan including sales, network services and equipment preparation. Finally, as in *Hige*, Jones is a shareholder of IPX, EG.   In sum, these facts satisfy the purposeful availment requirement.

## 2.  The Cause of Action Arose form Defendants Contacts in Michigan.

The standard for determining that a claim arises out of a defendant's

18

contacts with the forum state is not a demanding one.  The plaintiff's claim need not "formally 'arise from' defendant's contacts with the forum;" it is sufficient if the plaintiff's claim has a "substantial connection with the defendant's in-state activities." *Third Nat'l Bank. v. WEDGE Group., Inc*., 882 F.2d 1087, 1091 (6th Cir.1989) (citing *Mohasco*, 401 F.2d at 384, n. 27).   Likewise, "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)  The standard is a lenient one.  *Bird v. Parsons*, 289 F.3d at 875.

In this case, Plaintff's claims have a substantial connection with IXP, EG's in-state activities.  Plaintiff was stationed in Michigan to perform IPX, EG work.  Plaintiff performed the work in Michigan but has not been paid resulting in a breach of the employment contract.  These facts are sufficient to establish this element.

## 3.  It is Reasonable to Exercise Jurisdiction over of exercise of jurisdiction

In the *City of Monroe Employees Retirement System v. Bridgestone*, 399 F.3d 651, 666 (6th Cir.2005).  In considering whether the exercise of personal jurisdiction is reasonable, the courts consider several factors, including the burden on the defendant, the interests of the forum state, the plaintiff's interest in

19

obtaining relief, and the interest of other states in securing the most efficient

resolution of controversies. here a plaintiff satisfies the first two Mohasco factors,

a presumption arises that the exercise of jurisdiction is reasonable. *Bird*, 289 F.3d

at 875 (citing *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996)).

In *Manley Toys, Ltd.*, 68 F. Supp. 3d at 733–34, the court stated:

> Whatever the burden on Manley, Michigan has a strong interest in
> protecting its citizens from breaches of contract such as are alleged by
> August against Manley in this case. It would be an enormous burden
> for August to attempt to litigate this claim in Hong Kong. Moreover,
> August's claims relate to sales made to United States companies.
> Nothing about this case makes Hong Kong a reasonable venue for
> vindication of August's rights. An inference of reasonableness is
> appropriate here given the Court's resolution of the "purposeful
> availment" and "arising under" prongs. That inference is not defeated
> here by considerations of reasonableness.

In this case, all of the factors demonstrate that it is reasonable for this Court

to exercise personal jurisdiction over IPX, EG.  There is no burden on IPX, EG as

it has conducted business in Michigan daily since January, 2016 and has opened

an office containing its Network Operations Center in Southfield.  Similar to

*Manley*, Michigan has a strong interest in protecting its citizens from breaches of

contract such as in this case.  Nothing about this case would make litigation in EG

a reasonable venue for adjudicating Jones' rights under his contract.  This is

especially true given the fact that it would be all but impossible for him to obtain

20

justice in a country where the court system is controlled by the president who has
close family ties to this case.  Likewise, in light of the fact his brother-in-law's
passport was seized two days before he was suspended, it would be extremely
unsafe for Jones to return to EG.

## II.  THE EASTERN DISTRICT OF MICHIGAN IS THE PROPER FORUM.

In *Barak v. Zeff*, 289 F. App'x 907, 910 (6th Cir. 2008) the court set forth
the requirements to establish a dismissal on the grounds of forum non conveniens
stating:

> "A dismissal on forum non conveniens grounds is appropriate when
> the defendant establishes, first, that the claim can be heard in an
> available and adequate alternative forum and, second, that the balance
> of private and public factors listed in *Gulf Oil [Corp. v. Gilbert*], 330
> U.S. [501,] 508–09 [67 S.Ct. 839, 91 L.Ed. 1055] [1947], reveals that
> trial in the chosen forum would be unnecessarily burdensome for the
> defendant or the court."

The *Barak* court noted:

> The Supreme Court has provided guidelines for the kinds of private
> interests a district court should consider: "the relative ease of access
> to sources of proof; availability of compulsory process for attendance
> of unwilling, and the cost of obtaining attendance of willing,
> witnesses; possibility of view of premises ...; and all other practical
> problems that make trial of a case easy, expeditious, and
> inexpensive." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839.  Public
> interests the district court should consider include: congestion of the
> courts; the burden of jury duty "upon the people of a community
> which has no relation to the litigation"; the "local interest in having
> localized controversies decided at home"; and, in a diversity case, the

21

advantage of holding the trial "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Id. at 508–09, 67 S.Ct. 839.

A plaintiff's selection of a forum is ordinarily accorded deference. The United States Supreme Court, describing this deference in *Gulf Oil Corp v Gilbert*, 330 U.S. 508, stated, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed". As discussed below, The convenience of the parties will be best served by keeping the case in this Court, as demonstrated by an analysis of the *Barak* factors.

## A.  THERE IS NO ADEQUATE ALTERNATIVE FORUM.

The first step in analyzing a motion to dismiss based on forum non-conveniens is determining whether an adequate alternative forum exists. (Defendant's brief p. 18.)  In this case, there is clearly no adequate alternative forum.  As set forth in the State Department Bulletin, the EG judicial system is not independent and is corrupt.  (Exhibit 1.)

The fact that IPX, EG's majority shareholder is the son nephew of the president of EG would bar effectively bar any fair resolution of the claim as his uncle is the Chief Magistrate of the court system.  The State Department noted that corruption in the judiciary makes it difficult for U.S. businesses to protect their

investments.  Additionally, IPX, EG has already demonstrated it is willing to act outside the bounds of the law by its act of seizing Plaintiff's brother-in-law's passport.  Notably, the State Department warns businessmen traveling to EG of this very danger.  It is also certainly reasonable to conclude that Plaintiff's physical safety would be at risk is he entered EG and he would be the subject of a criminal prosecution as the State Department warns businessmen that EG has a history of criminalizing civil disputes such as this one.

The end result is that if this Court grants the motion and dismisses the case based on forum non conveniens, the effect of any dismissal would result in depriving Plaintiff of his day in court.  Thus, a Michigan resident, employed by a foreign company with an office in Michigan, who is stationed in Michigan to work would be denied even a chance of legal redress by Michigan court for his breach of contract claims.  Because of the danger to Plaintiff and the corruption in EG, there is no adequate alternative forum and the Court need not analyze the remaining factors.

## B.  THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF HEARING THE DISPUTE N MICHIGAN.

### 1.  The relative ease of access to sources of proof.

Defendant has a business office in Southfield, Michigan with its Network

Operations Center.  Chairman Ondo's affidavit lists four witnesses that he believes are necessary for litigation.  All of the witnesses he listed have spent time working in Southfield over the last two years.  This factor weighs in favor of Plaintiff.

**2. Availability of compulsory process for attendance of unwilling**

All of the witnesses are employees of Defendant which flies them to Detroit to conduct business.  There will be no issue with witnesses.  This factor weighs in favor of Plaintiff.

**3.  The cost of obtaining attendance of willing, witnesses;**

All of the witnesses are employees of Defendant which flies them to Detroit to conduct business.  The flights are expensive but that factor does not favor either party as one side or the other will have to travel to litigate this case.

**4.  Practical problems of trial.**

The number one problem with conducting a trial in EG is the institutional corruption.  Plaintiff is unable to get a fair trial in EG because the judiciary is corrupt.  Litigation in the Eastern District is appropriate as all of the witnesses travel to Michigan to conduct business on behalf of Defendant.  This factor weighs heavily in favor of Plaintiff.

**C. . THE PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF HEARING THE DISPUTE N MICHIGAN.**

**1. Congestion of the courts; the burden of jury duty "upon the people of a community which has no relation to the litigation**.

There is no right to a jury trial in EG and the judiciary is corrupt. The people of the United States and State of Michigan have an interest in making sure that contracts that are performed in Michigan are enforced in Michigan. This factor weighs heavily in favor of Plaintiff.

**2. The local interest in having localized controversies decided at home;**

The people of the United States and State of Michigan have an interest in making sure that contracts that are performed in Michigan are enforced in Michigan. This factor weighs heavily in favor of Plaintiff.

**3. Applicable law.**

The contract contains a provision that any breach shall be decided in "accordance with the applicable "Labor law" and state laws and regulations." ( R. 1-1, Article 8.) Accordingly, Michigan law is applicable to this dispute. This Court applies Michigan law frequently. The judiciary in EG has no experience in Michigan law. This factor also weighs heavily in favor of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant's motion.

Respectfully submitted,

S/Dean Elliott
Dean Elliott, PLC
201 East Fourth Street
Royal Oak, Michigan 48067
(248) 543-9000 Ext. 14
E-mail Dean@DeanElliottPLC.Com
P-60608

Dated: December 13, 2017

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on December 13, 2017, I presented the foregoing paper to the Clerk of Court for filing and uploading to the ECF system which will send notification to of such filing to the above listed attorneys of record.

                                             Respectfully Submitted,

                                             <u>S/Dean Elliott</u>
                                             Dean Elliott, PLC
                                             201 East Fourth Street
                                             Royal Oak, Michigan 48067
                                             (248) 543-9000 Ext. 14
                                             E-mail Dean@DeanElliottPLC.Com
                                             P-60608

Dated: December 13, 2017